UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LIBERTY MUTUAL INSURANCE COMPANY,

Plaintiff,

vs.

SCHNUCK MARKETS, INC.

Defendant.

Case No. _____

COMPLAINT FOR DECLARATORY
JUDGMENT
(Non-Jury)

Plaintiff, Liberty Mutual Insurance Company ("Liberty Mutual" or "Plaintiff") hereby files this Complaint for Declaratory Judgment against Defendant Schnuck Markets, Inc. ("Schnuck" or the "Defendant"), and alleges as follows:

1.    This action seeks a declaration of the parties' rights and obligations under an insurance contract issued by Liberty Mutual to Defendant with respect to eight lawsuits and additional written demands for costs arising out of an alleged breach of Defendant's computer system in which the perpetrators purportedly gained access to certain personal information of customers, including credit and debit card information. According to a Schnuck press release dated April 15, 2013, "between December 2012 and March 29, 2013, approximately 2.4 million credit and debit cards used at 79 of [Schnuck's] 100 stores may have been compromised." A true and correct copy of this press release is attached as Exhibit 1, and a true and correct copy of a Schnuck document purportedly listing the affected stores is attached as Exhibit 2.

2.    As described in more detail below, the eight suits (collectively, the "Suits") that Defendant has tendered to Liberty Mutual are *Bannister v. Schnuck Markets, Inc.*, Cause No. 1322-CC00800 (Mo. Cir. Ct., City of St. Louis) (the "*Bannister* Suit"); *Domiano v. Schnuck Markets, Inc.*, 4:13-cv-00683-NAB (E.D. Mo.) (the "*Domiano* Suit"); *Akelatis v.*

*Schnuck Markets, Inc.*, 3:13-cv-50142 (N.D. Ill.) (the "*Akelatis* Suit"); *McGann v. Schnuck Markets, Inc.*, Cause No. 1322-CC00800 (Mo. Cir. Ct., City of St. Louis) (the "*McGann* Suit"); *Rippy v. Schnuck Markets, Inc.*, Case No. 2013-L-218 (Ill. Cir. Ct., St. Clair Cty.) (the "*Rippy* Suit"); *Atteberry v. Schnuck Markets, Inc.*, 13-cv-2112 (C.D. Ill.) (the "*Atteberry* Suit"); *Castellano v. Schnuck Markets, Inc.*, 4:13-cv-01201 (E.D. Mo.) (the "*Castellano* Suit"); and *Thomas v. Schnuck Markets, Inc.* 2013-sc-02736 (Ill. Cir. Ct., Sangamon Cty.) (the "*Thomas* Suit").

3.      In addition, Defendant has tendered to Liberty Mutual ▮ written demands (collectively, the "Demands") for costs incurred due to the alleged breach: ▮



4.      Liberty Mutual seeks declaratory judgment that it is not obligated, under the excess commercial general liability policy that it issued, to provide indemnity to Defendant because coverage is unavailable as set forth more fully below.

## PARTIES

5.      Liberty Mutual is a corporation organized under the laws of Wisconsin and qualified to conduct business in Missouri. At all times alleged herein, Liberty Mutual maintained its principal place of business in Massachusetts.

6.      Upon information and belief, Defendant Schnuck is a company incorporated in Missouri with its principal place of business in St. Louis, Missouri.

- 2 -

## JURISDICTION

7.      This action is brought pursuant to 28 U.S.C. §§ 1332, 2201, and 2202.

8.      There is complete diversity of citizenship between the Plaintiff, on the one hand, and the Defendant, on the other hand, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      This Court has personal jurisdiction over the Defendant because it is found in this judicial district and because it conducts and transacts business in this district.

## VENUE

10.      Venue is proper pursuant to 28 U.S.C. § 1391 because the Defendant resides in this judicial district, and a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

### The Policies

11.      Liberty Mutual issued to Schnuck an excess commercial general liability policy (the "Policy") for the period of July 1, 2012 to July 1, 2013. The Policy provides for a liability limit of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ aggregate limit. A true and correct copy of the Policy is attached as Exhibit 3.

12.      The Policy contains the following Insuring Agreement under Coverage A Bodily Injury and Property Damage Liability:

     **a.**      We will pay those sums in excess of the "self-insured amount" that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this excess insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for in SECTION VII - SUPPLEMENTARY PAYMENTS/ALLOCATED LOSS ADJUSTMENT EXPENSE. The amount we will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE. This insurance applies to "bodily injury" and "property damage" only if:

> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>
> **(2)** The "bodily injury" or "property damage" occurs during the policy period . . . .
>
> . . . .

**e.** We WILL NOT have the duty to defend or investigate any claim or "suit" seeking damages to which this insurance may apply.

**f.** Rights and duties relating to the defense, settlement and investigation of claims or "suits" to which this insurance may apply are set forth in SECTION VI - DEFENSE, SETTLEMENT AND INVESTIGATION OF CLAIMS AND SUITS.

13. The Policy contains the following Insuring Agreement under Coverage B

Personal and Advertising Injury Liability:

**a.** We will pay those sums in excess of the "self-insured amount" that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this excess insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for in SECTION VII - SUPPLEMENTARY PAYMENTS/ALLOCATED LOSS ADJUSTMENT EXPENSE. The amount we will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**c.** We WILL NOT have the duty to defend or investigate any claim or "suit" seeking damages to which this insurance may apply.

**d.** Rights and duties relating to the defense, settlement and investigation of claims or "suits" to which this insurance may apply are set forth in SECTION VI - DEFENSE, SETTLEMENT AND INVESTIGATION OF CLAIMS OR SUITS.

14. The Policy defines "[b]odily injury" as:

**a.** Bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time; and

- 4 -

**b.** Mental anguish, shock or humiliation arising out of injury as defined in paragraph a. above. Mental anguish means any type of mental or emotional illness or distress. . . .

15. The Policy defines "[p]roperty damage" as:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from, computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

16. The Policy defines "personal and advertising injury" as "injury, including

consequential 'bodily injury', arising out of one or more of the following offenses:"

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

17. The Policy defines "coverage territory" as:

- 5 -

    **a.**    The United States of America (including its territories and possessions, Puerto Rico and Canada;

    **b.**    International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

    **c.**    All other parts of the world if the injury or damage arises out of:

        **(1)**    Goods or products made or sold by you in the territory described in a. above;

        **(2)**    The activities of a person whose home in the territory described in a. above, but is away for a short time on your own business; or

        **(3)**    "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication, provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

18.     The Policy defines "occurrence" with respect to "bodily injury" or "property damage" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

19.     The Policy defines "occurrence" with respect to "personal and advertising injury" as "an offense or series of related offenses."

20.     The Policy provides that the insured, and not the insurer, has the duty to defend any "'suit.'" *See* Policy, Section VI(1). However, Liberty Mutual has the "right at any time" to "assume control of the defense" or "associate at [Liberty Mutual's] own expense" in the defense of any "claim" or "'suit.'" *See* Policy, Section VI(2-3).

21.     The Expected Or Intended Injury Exclusion provides that Coverage A of the Policy does not apply to "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." The exclusion "does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property."

22.     The Knowing Violation of Rights of Another Exclusion provides that Coverage B of the Policy does not apply to "'[p]ersonal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "'personal and advertising injury.'"

23.     The Material Published Prior To Policy Period Exclusion provides that Coverage B of the Policy does not apply to "'[p]ersonal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

24.     The Contractual Liability Exclusion under Coverage A of the Policy provides that Coverage A of the Policy does not apply to "'[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." The exclusion provides that it does not apply to "liability for damages . . . that the insured would have in the absence of the contract or agreement; or . . . [a]ssumed in a contract or agreement that is an 'insured contract', provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement."

25.     Similarly, the Contractual Liability Exclusion under Coverage B of the Policy provides that Coverage B of the Policy does not apply to "'[p]ersonal and advertising injury' for which the insured has assumed liability in a contract or agreement," and the exclusion provides that it does not apply to "liability for damages that the insured would have had in the absence of the contract or agreement."

26.     The Breach Of Contract Exclusion provides that Coverage B of the Policy does not apply to "'[p]ersonal and advertising injury' arising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement.'"

27.     The LC 21 57 08 07 All Hazards in Connection with Designated Premises Exclusion endorsement states that the Policy does not apply "to 'bodily injury', 'property damage' or 'personal and advertising injury' arising out of:

1.     The ownership, maintenance or use of the premises shown in the Schedule or any property located on these premises;

2.     Operations on those premises or elsewhere which are necessary or incidental to the ownership, maintenance or use of those premises; or;

3.     Goods or products manufactured or distributed from those premises.

28.     The LC 21 43 10 09 Recording and Distribution of Material or Information in Violation of Law Exclusion endorsement states, in relevant part, that there is no coverage for loss "arising directly or indirectly out of any action or omission that violates or is alleged to violate" any "federal, state or local statute, ordinance or regulation" other than those specifically listed, "that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information."

29.     The Policy provides that no insured will "except at that insured's cost, make or accept any settlement for damages which exceed the 'self-insured amount' without our prior written consent."  It also provides that the insured may not make any agreement or settlement which relieves it of any further liability but explicitly or impliedly reserves a right of action by any claimant against Liberty Mutual.

30.     The Policy provides that "[t]he insured must notify us immediately of any offer of settlement of a claim or 'suit' made to the insured."

- 8 -

31. The Policy defines "Other Insurance" as "any other valid and collectible

insurance, whether primary, excess, contingent or on any other basis, except any such insurance

purchased by the insured specifically to apply in excess of this insurance."

32. The Policy provides for a "self-insured amount" of ████ *See* Policy,

Declarations, Item 4. The Policy defines "self-insured amount" as:

- **a.** If the insured has no "other insurance" or has "other insurance" less than the amount shown in the Declarations under item 4:

  - **(1)** With respect to damages to which this policy (including any endorsements(s) thereto) applies on an each "occurrence" basis: As to each "occurrence", the amount shown in the Declarations under item 4, Self-insured Amount.

  - **(2)** With respect to damages to which this policy (including any endorsements(s) thereto) applies on an each claim, each accident, each person or organization, each disease or other stated basis rather than on an each "occurrence" basis: As to each claim, each accident, each person or organization, each disease or other stated basis, whichever applies, the amount shown in the Declarations under item 4, Self-insured Amount.

- **b.** If the insured has no "other insurance" or has "other insurance" less than the amount shown in the Declarations under item 4: All amounts payable or retained under such "other insurance"; but not less than the amount shown in the Declarations under item 4, Self-insured Amount.

33. The Policy's "Limits of Insurance" section provides, in relevant part, that:

- **1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
  - **(1)** Insureds;
  - **(2)** Claims made or 'suits' brought; or
  - **(3)** Persons or organizations making claims or bringing "suits."

- **2.** The General Aggregate Limit is the most we will pay for the sum of:
  - **(a)** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and
  - **(b)** Damages under Coverage B.

[. . .]

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for damages under Coverage A because of all "bodily injury" and "property damage" arising out of any one "occurrence".

34. The Policy contains additional terms, exclusions, limitations and conditions that may be potentially applicable to the Suits and Demands.

**The Suits and Demands**

The *Bannister* Suit

35. The *Bannister* Suit was commenced by the filing of a petition on April 8, 2013, by Michael Bannister, on behalf of himself and others similarly situated, against Schnuck in the Missouri Circuit Court of the City of St. Louis. A true and correct copy of the petition in the *Bannister* Suit is attached as Exhibit 4.

36. The petition in the *Bannister* Suit alleges that Schnuck "fail[ed] to secure and safeguard its customers' personal data" and "grossly failed to comply with security standards" which enabled hackers to steal various "personal identifying information." Petition, *Bannister* Suit, ¶¶ 1-5.

37. In addition, the petition in the *Bannister* suit alleges that Schnuck "failed to disclose the extent of the Data Breach, failed to individually notify each of its affected customers of the Data Breach in a timely manner, and failed to take other reasonable steps to clearly and conspicuously inform Plaintiff and Class members of the nature and extent of the Data Breach." Petition, *Bannister* Suit, ¶ 5.

38. The petition in the *Bannister* Suit seeks to certify a class comprised of "[a]ll Missouri residents who made an authorized in-store purchase using a credit or debit card at a

- 10 -

Schnucks store in Missouri during the period of time that Schnucks' computer systems were compromised." Petition, *Bannister* Suit, ¶ 58.

39.     The petition in the *Bannister* Suit includes counts for "breach of implied contract," "violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. ¶ 407.010 *et seq.*," and "invasion of privacy by public disclosure of private facts."

40.     The *Bannister* Suit seeks class certification, a declaration that Schnuck has breached an implied contract with the plaintiff and the putative class; a declaration that Schnuck has invaded the privacy of the plaintiff and the putative class, punitive and statutory damages, an order that Schnuck post and disseminate notice of the breach, pre- and post-judgment interest, and attorneys' fees and costs.

The *Akelaitis* Suit

41.     The *Akelaitis* Suit was commenced by the filing of a complaint on April 18, 2013, by Mary Akelaitis, on behalf of herself and others similarly situated, against Schnuck in the U.S. District Court for the Northern District of Illinois.  A true and correct copy of the complaint in the *Akelaitis* Suit is attached as Exhibit 5.

42.     The complaint in the *Akelaitis* Suit alleges that Schnuck committed "violations of its obligations to abide by the best practices and industry standards concerning the security of its payment processing systems and the computers associated therewith" which caused the theft of personal information of the putative class members. Complaint, *Akelaitis* Suit, ¶ 4.

43.     In addition, the complaint in the *Akelaitis* suit alleges that Schnuck "failed to notify Plaintiff and the putative class in a timely manner and failed to take other reasonable steps to inform them of the nature and extent of the breach," which prevented the putative

members of the class from "protecting themselves from the breach." Complaint, *Akelaitis*
Suit, ¶ 5.

44.      The complaint in the *Akelaitis* Suit seeks to certify a class comprised of "[a]ll
persons who made a purchase at a Schnuck store using a debit or credit card during the time in
which Schnuck's computer systems were compromised (which is currently believe[d] to be
from December 12, 2012 to March 28, 2013.)." Complaint, *Akelaitis* Suit, ¶ 23. It also seeks
certification of an "Illinois sub-class" defined as "[a]ll Illinois citizens and residents who made
a purchase at a Schnucks store in Illinois using a using a debit or credit card during the time in
which Schnuck's computer systems were compromised (which is currently believe[d] to be
from December 12, 2012 to March 28, 2013.)." Complaint, *Akelaitis* Suit, ¶ 24.

45.      The complaint in the *Akelaitis* Suit includes counts for "negligence (on behalf of
the nationwide class)," "breach of implied contract (on behalf of nationwide class)," "violation
of the Illinois Personal Information Act (on behalf of the Illinois sub-class)," and "violations of
the Illinois Consumer Fraud and Deceptive Practices Act (on behalf of the Illinois Sub-Class)."

46.      The complaint seeks class certification; damages; statutory interest and penalties;
injunctive and/or declaratory relief; costs, interest and attorneys' fees.

### The *McGann* Suit

47.      Susan McGann and others, individually and on behalf of all others similarly
situated, filed a First Amended Class Action Petition in the *McGann* Suit on April 18, 2013
against Schnuck in the Missouri Circuit Court of the City of St. Louis. A true and correct copy
of the First Amended Class Action Petition in the *McGann* Suit is attached as Exhibit 6.

48.      The petition in the *McGann* Suit alleges that Schnuck "fail[ed] to secure and
safeguard its customers' personal financial data" which enabled hackers to steal various
"personal identifying information." First Amended Class Action Petition, *McGann* Suit, ¶ 1.

49.     In addition, the petition in the *McGann* Suit alleges that Schnuck "failed to disclose the extent of the Data Breach, failed to individually notify each of its affected customers of the Data Breach in a timely manner, and failed to take other reasonable steps to clearly and conspicuously inform Plaintiffs and Class members of the nature and extent of the Data Breach." First Amended Class Action Petition, *McGann* Suit, ¶ 5.

50.     The petition in the *McGann* Suit seeks to certify a class comprised of "[a]ll Missouri residents who made an authorized in-store purchase using a credit or debit card at a Schnucks store in Missouri during the period of time that Schnucks' computer systems were compromised." First Amended Class Action Petition, *McGann* Suit, ¶ 66.

51.     The petition in the *McGann* Suit includes counts for "breach of implied contract," "violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat § 407.010, *et seq.*," and "invasion of privacy by public disclosure of private facts."

52.     The petition seeks class certification; actual damages, declarations that Schnuck has violated the Missouri Merchandising Practices Act and "invaded Plaintiffs' and Class members' privacy," punitive damages, statutory damages, attorneys' fees and litigation costs, and pre- and post-judgment interest. The petition also seeks declaratory relief and an order that Schnucks disseminate individualized notice of the "Data Breach" to all Class members.

The *Rippy* Suit

53.     The *Rippy* Suit was commenced by the filing of a complaint on April 25, 2013, by Laverne Rippy, individually and on behalf of herself and others similarly situated, against Schnuck in the Illinois Circuit Court of St. Clair County.  A true and correct copy of the complaint in the *Rippy* Suit is attached as Exhibit 7.

54.     The complaint in the *Rippy* Suit alleges that Schnuck failed to notify the members of the putative class of a data breach that "compromise[d] the security of Defendant's customers' information" in compliance with various statutory provisions. Complaint, *Rippy* Suit, ¶¶ 1, 6-8.

55.     The complaint in the *Rippy* Suit seeks to certify a class comprised of "[a]ll Illinois citizens and residents with individual monetary claims not in excess of $75,000 exclusive of interest and costs, who shopped at Defendant's Illinois locations, who from five years preceding the data breach of Defendant's security that compromised credit card and debit card information, was not provided notice in compliance with 815 ILCS 530/10." Complaint, *Rippy* Suit, ¶ 10.

56.     The complaint in the *Rippy* Suit includes counts for "Consumer Fraud – Unfair Practice," "Consumer Fraud – Material Omission," "Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act by virtue of violation of the Illinois Personal Information Act," and negligence.

57.     The complaint seeks class certification, actual damages, costs and attorneys' fees, including interest.

- 14 -

<u>The *Domiano* Suit</u>

58.     The *Domiano* Suit was commenced by the filing of a complaint on April 11, 2013, by Robert Domiano and several other individuals, on behalf of themselves and others similarly situated, against Schnuck in the U.S. District Court for the Eastern District of Missouri.  A true and correct copy of the complaint in the *Domiano* Suit is attached as Exhibit 8.

59.     The complaint in the *Domiano* Suit alleges that Schnuck "fail[ed] to secure and safeguard customers' private financial information" and used "inadequate security" which caused the theft of personal information of the putative class members. Complaint, *Domiano* Suit, ¶¶ 1, 3.

60.     In addition, the complaint in the *Domiano* suit alleges that Schnuck "failed to disclose the extent of the data breach or promptly identify each of the affected stores" and that Schnuck "also failed to individually notify each of its affected customers of the data breach and failed to take other reasonable steps to clearly and conspicuously inform its customers of the nature and extent of the breach," which purportedly prevented the putative members of the class from "protecting themselves."  Complaint, *Domiano* Suit, ¶ 8.

61.     The complaint in the *Domiano* Suit seeks to certify a class comprised of "[a]ll persons in the United States who made an in-store purchase at a Schnucks store in the United States using a debit or credit card during the time that the security of Schnucks payment system was breached." Complaint, *Domiano* Suit, ¶ 27.

62.     The complaint in the *Domiano* Suit includes counts for "violation of the Federal Stored Communications Act, 18 U.S.C. § 2702," "violation of the Missouri Merchandising

Practices Act and substantially similar statutes of the other states where [Schnuck] does business," negligence, negligence *per se*, and "breach of implied contract."

63.     The complaint seeks class certification, actual damages, compensatory damages; consequential and statutory damages; payment for credit card monitoring; punitive damages; costs, interest and attorneys' fees.

The *Atteberry* Suit

64.     The *Atteberry* Suit was commenced by the filing of a complaint on May 22, 2013, by Cassandra Atteberry, on behalf of herself and others similarly situated, against Schnuck in the U.S. District Court for the Central District of Illinois.  A true and correct copy of the complaint in the *Atteberry* Suit is attached as Exhibit 9.

65.     The complaint in the *Atteberry* Suit alleges that Schnuck "fail[ed] to abide by best practices and basic industry standards concerning the security of its computer and payment processing systems" which allowed for the theft of "Personally Identifying Information" of the putative class. Complaint, *Atteberry* Suit, ¶ 7-8.

66.     In addition, the complaint in the *Atteberry* suit alleges that Schnuck "never provided actual notice to its individual consumers" of the breach as provided for in Illinois's Personal Information Protection Act.  Complaint, *Atteberry* Suit, ¶ 10.

67.     The complaint in the *Atteberry* Suit seeks to certify a class comprised of "[a]ll persons throughout the United States who used their credit card or debit card with the Defendant in any transaction occurring during the period of time that the Defendant's computer systems were compromised; or . . . [a]ll persons throughout the United States who used their credit card or debit card with the Defendant in any transaction occurring during the period of time that the Defendant's computer systems were compromised who were not provided with

- 16 -

notice in compliance with 815 ILCS 530/10, and like and similar statutes of the other states."
Complaint, *Atteberry* Suit, ¶ 12.

68.     The complaint in the *Atteberry* Suit includes counts for "violation of the Illinois
Consumer Fraud and Deceptive Business Practices Act based upon the Personal Information
Protection Act," "breach of implied contract," "invasion of privacy by disclosure of private
facts," negligence, and "third party beneficiary."

69.     The complaint in the *Atteberry* Suit seeks class certification, actual,
compensatory and punitive damages, attorneys' fees and litigation expenses.  It also seeks
individualized notice of the breach to all class members.

The *Castellano* Suit

70.     The *Castellano* Suit was commenced by the filing of a complaint on June 25,
2013, by Michael Castellano and others, on behalf of themselves and others similarly situated,
against Schnuck in the U.S. District Court for the Eastern District of Missouri.  A true and
correct copy of the complaint in the *Castellano* Suit is attached as Exhibit 10.

71.     The complaint in the *Castellano* Suit alleges that Schnuck failed "to abide by the
best practices and industry standards concerning the security of its payment processing systems
and the computers associated therewith" which allowed for the theft of "Personal Information"
of the putative class. Complaint, *Castellano* Suit, ¶ 4.

72.     In addition, the complaint in the *Castellano* suit alleges that Schnuck "failed to
notify Plaintiffs and the putative Classes in a timely manner and failed to take other reasonable
steps to inform them of the nature and extent of the breach."  Complaint, *Castellano* Suit, ¶ 5.

73.     The complaint in the *Castellano* Suit seeks to certify the following two classes:

All persons who shopped at Defendant's locations, who were not provided notice of the data breach
of Defendant's security that compromised consumers' credit card and debit card information and

who suffered damages in the loss of time and use of their credit and debit cards until such time as replacement cards could be obtained.

All persons who shopped at Defendant's locations, who were not provided notice of the data breach of Defendant's security that compromised consumers' credit card and debit card information and suffered damages in the amount of fraudulent charges made to their credit and/or debit cards not reimbursed or reversed by their financial institution or suffered damages in the amount of overdraft charges made to their credit and/or debit cards not reimbursed or reversed by their financial institution.

Complaint, *Castellano* Suit, ¶ 31.

74. The complaint in the *Castellano* Suit includes counts for "violations of the Stored Communications Act ("SCA"), 18 U.S.C. § 2702; negligence; breach of implied contract; violations of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020, and the substantially similar statutes of the other states in which Schnucks conducts business; and violations of the Illinois Personal Information Protection Act ("IPIPA"), 815 ILCS 530/1, and the substantially similar statutes of the other states in which Schnucks conducts business." Complaint, *Castellano* Suit, ¶ 6.

75. The complaint in the *Castellano* Suit seeks class certification, compensatory and punative damages, statutory interest and penalties, injunctive and/or declaratory relief, costs, prejudgment interest, and attorney fees.

The *Thomas* Suit

76. The complaint in the *Thomas* Suit, a true and correct copy of which is attached as Exhibit 11, was commenced by the filing of a Small Claims Complaint in the Circuit Court for the Seventh Judicial Circuit of Illinois, Sangamon County on or about June 12, 2013. The body of the complaint reads as follows:

I, the undersigned, claim that the Defendant is indebted to the Plaintiff in the sum of court costs of $150 and Legal fees of $2,800 totaling $6,450 for violating the Illinois Consumer Fraud and Deceptive Practices Act by offering to accept credit and debit cards as form of payment in the course of conduct involving trade or commerce, deceptively failing to maintain reasonable procedures 'designed to protect against

unauthorized access while transferring credit card information, intending the Plaintiff to rely on said deception in order to complete the sale of goods, causing the Plaintiff who shopped at the Defendant's location at 2801 Chatham Road, Springfield, IL 62704 on both December 3rd and December 12, 2013.(ExhibitA) to suffer damages by having his credit card number of over 6 years compromised by Defendant causing him to spend 10 hours changing account numbers on websites, auto-debits, and working with various customer service departments to convert to a new credit card number (Exhibit B) and the Plaintiff has demanded payment of said sum, that the Defendant refused to pay the same and no part thereof has been paid.

The Demands



### Liberty Mutual's Coverage Position

82.     Liberty Mutual has issued a letter addressed to Schnuck, advising of its coverage position.  A true and correct copy of this letter is attached as Exhibit 17 hereto.  In this letter, Liberty Mutual advised Schnuck that it believes the Policy will not cover the Suits and Demands for the reasons set out therein, asked Schnuck to provide any information that might lead to different conclusions regarding coverage, and advised Schnuck that Liberty Mutual might initiate a declaratory judgment action against Schnuck asking a court to determine the parties' rights and duties under the Policy.

## FIRST CAUSE OF ACTION
### (Declaration of Indemnity)

83.     Liberty Mutual incorporates the allegations in Paragraphs 1-82 as if fully re-alleged herein.

84.     Liberty Mutual believes that, to the extent that Defendants are or become legally obligated to pay sums for the Suits and Demands, Liberty Mutual's indemnification obligations, if any, will be precluded or limited based upon but not limited to the following reasons:

Under Coverage A:

   a.  Coverage does not apply under Coverage A because the requirements of the insuring agreement are not met and there is no allegation of "bodily injury" or "property damage" in the Suits or Demands;

   b.  Coverage also does not apply under Coverage A because there is no "occurrence" and because the Expected Or Intended Injury Exclusion applies, at least to the extent that the claims are for Schnuck's delay in reporting the breach;

   c.  Coverage also does not apply under Coverage A to the extent that the relief sought does not constitute "damages"; and

- 20 -

d. Coverage also does not apply under Coverage A for relief due to the assumption of
liability under a contract or agreement because the Contractual Liability Exclusion
under Coverage A applies;

Under Coverage B:

e. Coverage does not apply under Coverage B because the Suits and Demands are not
for sums that the insured is "legally obligated to pay as damages because of
'personal and advertising injury'" and because the damages were not because of oral
or written publication of material (or any other offense listed therein);

f. Coverage also does not apply under Coverage B to at least some of the Suits and
Demands because the Breach Of Contract Exclusion and Contractual Liability
Exclusion under Coverage B apply;

g. Coverage also does not apply under Coverage B due to the Knowing Violation of
Rights of Another Exclusion as well as the known loss and fortuity doctrine, at least
to the extent that the Suits and Demands seek damages from the insured's delay in
reporting the breach to the plaintiffs;

h. Coverage also does not apply under Coverage B to the extent that the "offense" was
not committed during the policy period;

i. Coverage also does not apply under Coverage B to the extent that the claims arose
out of first publication before the policy period due to the Material Published Prior
To Policy Period Exclusion;

Under Coverages A and B:

j. If coverage were to exist, it would be limited to ▮▮▮▮▮▮▮▮▮▮▮▮ "self-
insured amount";

- 21 -

k.  Coverage does not apply under Coverage A or B for violations of statutes that fall within the Distribution of Information Exclusion;

l.  Coverage does not apply under Coverage A or B for punitive damages or non-damages relief sought;

m.  Coverage also does not apply under Coverage A or B for relief that does not constitute "damages" under the Policy, including injunctive and declaratory relief;

n.  Coverage does not apply to claims arising out of operations at the locations described in the Schedule to the All Hazards in Connection with Designated Premises Exclusion; and

o.  Coverage may be unavailable or limited by additional terms, exclusions, conditions and limitations in the Policy.

85.  Defendant contends that Liberty Mutual is obligated to indemnify it for damages that it becomes or is legally obligated to pay for the Suits and Demands. An actual controversy exists, and Liberty Mutual has no adequate remedy at law to resolve this controversy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Liberty Mutual prays that the Court enter judgment in its favor as follows:

A.  Declaring that Liberty Mutual has no duty to indemnify Defendant for the Suits and Demands, or in the alternative that any duty to indemnify by Liberty Mutual is limited by the terms, conditions, exclusions, and limitations of the Policies; and

B.  Such additional declaratory and other relief as shall be found to be just and proper under the circumstances.

Dated:  August 14, 2013                    Respectfully submitted,



Matthew S. Hendricks, #44442
1010 Market Street, Suite 950
St. Louis, MO 63101
314-231-2925
314-231-4857 Fax
Hendricks@bscr-law.com

*Attorneys for Plaintiff Liberty Mutual Insurance Company*